UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOETTA HOWELL | ) | |
| | ) | |
| | ) | CASE NO.: _____ |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| FLEX-TECH HOSE & TUBING, LLC | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COMPLAINT & JURY DEMAND

Plaintiff Joetta Howell, by counsel, alleges and states as follows:

1). Ms. Howell resides in Elkhart County, Indiana.

2). Flex-Tech Hose & Tubing, LLC is a foreign limited liability company established under laws of the state of Ohio that regularly conducts business in Elkhart County, Indiana.

3). Flex-Tech is engaged in the business of manufacturing thermoplastic LPG hose and hose assemblies used in boats and recreational vehicles, outdoor gas grills, turkey fryers, fish cookers, torches, patio heaters and camping appliances that are sold to the public.

4). Ms. Howell brings this action for retaliatory discharge pursuant to 15 U.S.C. §2087(b)(4) and 49 U.S.C. §30171(b)(3)(E).

5). Flex-Tech's products are component parts of consumer products within the definition and meaning of 16 CFR §1109.4(b). Flex-Tech is a testing party within the definition and meaning of 16 CFR §1109.4(k).

6). Flex-Tech employed Ms. Howell at its plant in Goshen, Indiana beginning on or about May 15, 2017 and ending on May 17, 2020 when it discharged her.

1

7).     During all relevant times, Ms. Howell's job title at Flex-Tech was Quality Manager.  In that capacity, Ms. Howell's job duties included keeping records of the testing of the tubing products manufactured at the Goshen, Indiana facility.

8).  As Quality Manager, Ms. Howell reported to plant manager Rocco Caraballo and to general manager Ryan Allman.   Plant manager Caraballo and general manager Allman decided what testing would be performed and how often it would be done.

9).   Ms.  Howell is making claims against Flex-Tech pursuant to 15 U.S.C. §2087(a)(1) & (4) and 49 U.S.C. §30171(a)(5)  for unlawfully retaliating against her for providing information to her employer that its tubing products were creating an unreasonable risk of serious injury or death to consumers and for objecting to and refusing to participate in activities and practices of Flex-Tech that she reasonably believed violated the Consumer Product Safety Act and Moving Ahead For Progress in the 21st Century, "MAP-21," 49 USC §30171 (collectively the "Acts").

10).  During all times referred to herein, Flex-Tech retained Underwriters Laboratories to function as its third-party testing partner for purposes of safety certification.  Flex-Tech marketed its product line with a UL certification label of the kind depicted in Figure 1 below.

Figure 1

2

To maintain UL certification, general manager Allman instructed Ms. Howell to interact with UL's field services engineer, James Mumaw, as the company's liaison whenever he visited the facility to inspect operations.

11). When Mr. Mumaw was scheduled to visit the plant to conduct an inspection, general manager Allman and plant manager Caraballo would alert key personnel in the plant's production operation of Mr. Mumaw's arrival so that measures could be taken to conceal from him the fact that less than 1 percent of hoses were safety tested.

12). Flex-Tech's product line included a multi-hose assembly used to connect multiple LP gas appliances typically found in boats and recreational vehicles. Figure 2 is representative of this type of assembly. The metal end pieces which held each hose in place were affixed to each hose by a process known as crimping. Crimping was performed at the Goshen plant.



Figure 2

13).   Flex-Tech understood that when a metal end piece is not properly crimped, highly combustible LP gas may leak from the assembly exposing consumers to serious injury or death by fire or asphyxiation.  Accordingly testing the integrity of the crimping was crucial to ensuring that the product was safe for its intended use.   This was to be done by a procedure known as a tensile test.

14).   Flex-Tech also understood that a hose may leak LP gas from a fissure or crack that can accidentally occur during the production of the hose.   Testing the integrity of the hose structure for leaks was to be done by a procedure known as a hydrostatic test.

15).   Beginning in the summer of 2018, Ms. Howell observed that the Goshen plant was hydrostatic testing less than one percent (1%) of the hose assemblies.  The plant was generally producing as many as 6,000 assemblies per week and an assembly can have as many as ten hoses.   She also observed that hose samples tested for tensile strength frequently failed the UL standard of 400 pounds, yet the non-complying product was cleared for shipment any way.   At that time, Ms. Howell met with Flex-Tech's president, Jeff Mack, and informed him of this information.

16).   On January 9, 2020, Ms. Howell was present in the plant when UL engineer Mumaw made a visit.   Mr. Mumaw overheard an announcement on the plant's public address system that led him to suspect that Flex-Tech had deceived him into believing that every hose was routinely tested.   Mr. Mumaw asked Ms. Howell "what is going on?"   Previously, general manager Allman had instructed Ms. Howell to refrain from revealing to Mr. Mumaw the fact that less than 1 percent of hoses were tested.   Ms. Howell responded to Mr. Mumaw's inquiry truthfully. She told him on that production was testing less than 1 % of the hoses.

17)    On January 30, 2020, Ms. Howell reported the January 9th incident to Flexco's president Jeff Mack and CEO Allen Haire in a letter that stated in relevant part:

4

> As you know, I am the Quality Manager at the Goshen, Indiana facility. Flex-Tech is probably one of the largest domestic manufacturers of thermoplastic LP gas hose and tubing. Our product is used in a variety of consumer products, including boats and recreational vehicles. As you know, we market our product under certification by Underwriter's Laboratories. To receive UL certification, Flex-Tech is required to comply with certain quality control standards. For obvious reasons, these standards include testing the product. A hose that leaks gas inside a boat or recreational vehicle poses a significant risk of bodily injury or death to the occupants.
>
> Approximately early 2018, I met with Mr. Mack in my office to discuss my concerns about two aspects of quality control:
>
> First, I informed him that the plant was hydrostatic testing less than 1% of the hose assemblies. We produce approximately 6,000 assemblies per week. Each assembly has multiple hoses, some as many as 10. The UL standard requires that *every* hose be tested for leaks. This short fall has never been corrected to my knowledge.
>
> Second, I informed him that samples tested for tensile strength were frequently failing the 400 pound UL standard but the product was cleared for shipment anyway. An effort was made to correct this deficiency. Recently, new crimping equipment was installed in the plant.
>
> This means that Flex-Tech has introduced into the marketplace over a period of almost two years, tens of thousands of hoses bearing a UL certification label that is misleading. Those hoses did not deserve the UL label that they received. The consumers who purchased those hoses in reliance upon that false label deserve to know the truth before some tragedy happens.
>
> I don't want someone's injury or death on my conscience, do you?
>
> On January 9, 2020, I had a meeting with James Mumaw from Underwriter's Laboratories. While Mr. Mumaw was in the plant, he overheard a PA announcement that led him to suspect that our production department had deceived him about testing. He asked me directly what was going on. I told him the truth. I told him that production was testing less than 1% of the hoses.

18). Flex-Tech intentionally discharged Ms. Howell on May 17, 2020 in retaliation for providing information to the company about its unsafe practices that she reasonably believed to be a violation of the Acts and her refusal to participate, condone or assist in tasks that she likewise reasonably believed to be in violation of the Acts.

19). Ms. Howell served her whistleblower complaint upon the Secretary of Labor on or about August 5, 2020, a date more than 210 days ago. The Secretary of Labor has not issued a final decision on her complaint. Pursuant to 15 USC §2087(b)(4) and 49 USC §30171(b)(2)(E), Ms. Howell is authorized to initiate this action.

5

20). As a direct and proximate result of Flex-Tech's unlawful retaliation, Ms. Howell has suffered a loss of income and fringe benefits as well as mental and emotional distress, humiliation, and anxiety.

21). Ms. Howell has retained the undersigned lawyer to prosecute this claim.

WHEREFORE, Plaintiff respectfully prays for a judgment against the Defendant and an award of the following statutory relief:

    a). Reinstatement to the same job position with the same seniority status;

    b). Back pay with interest;

    c). Special damages;

    d). Compensatory damages;

    e). Rreasonable attorney's fee.

### Jury Demand

Plaintiff respectfully demands trial by jury.

    Respectfully submitted:

_____
Patrick F. O'Leary (#10274-20)
Winsor Office Park
3000 Windsor Court, Suite A
Elkhart, Indiana 46514
574-264-6262

Attorney for Plaintiff

7